## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CRYSTAL GARRETT-EVANS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION |
| vs. | DEMAND FOR JURY TRIAL |
| COTY INC., LAMBERTUS "BART" BECHT, CAMILLO PANE, PIERRE LAUBIES, PATRICE DE TALHOUËT, and PIERRE-ANDRE TERISSE, | |
| Defendants. | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF
## THE FEDERAL SECURITIES LAWS

Plaintiff Crystal Garrett-Evans ("Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned counsel, hereby bring this Class Action Complaint (the "Complaint") against Coty Inc. ("Coty" or "the Company"), Lambertus "Bart" Becht ("Becht"), Camillo Pane ("Pane"), Pierre Laubies ("Laubies"), Patrice de Talhouët ("Talhouët"), and Pierre-Andre Terisse ("Terisse") (collectively, "Defendants"). The allegations herein are based on Plaintiff's personal knowledge as to his own acts and on information and belief as to all other matters, such information and belief having been informed by the investigation conducted by and under the supervision of counsel, which includes a review of: U.S. Securities and Exchange Commission ("SEC") filings by Coty; securities analysts' reports and advisories about the Company; press releases and other public statements issued by the Company; and media reports about the Company. Counsel's investigation into the matters alleged herein is ongoing and many relevant facts are known only to, or are exclusively within the custody or control of, Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. On behalf of himself and the class he seeks to represent, Plaintiff alleges as follows:

## I.      NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired Coty common stock during the period from October 3, 2016 to May 28, 2020, inclusive (the "Class Period"), and were damaged thereby. The action is brought against Coty and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Coty is one of the world's largest beauty companies. The Company operates three divisions: Coty Consumer Beauty ("Consumer Beauty") which focuses on color cosmetics, retail hair coloring and styling products, body care and mass fragrances sold primarily in the mass retail

channels; Coty Luxury ("Coty Luxury") which focuses on prestige fragrances and skincare brands; and Coty Professional Beauty ("Coty Professional") which focuses on servicing nail salon owners and professionals in both hair and nail.

3. On the first day of the Class Period, October 3, 2016, Coty issued a press release announcing the completion of its blockbuster merger with The Proctor & Gamble Company's fine fragrance, color cosmetics, salon professional and hair color and certain styling businesses ("P&G Specialty Beauty Business") for $12.5 billion to scale up its beauty business. In the press release, Defendant Becht, Chairman of Coty's Board of Directors ("Board"), confirmed that "…we now have a much improved team, structure and culture to make the vision of this merger a reality."[1]

4. But just four months later, on February 9, 2017, the truth began leaking out when Coty reported its second quarter fiscal 2017 results, which was the first quarter after its completion of the merger with the P&G Specialty Beauty Business. Coty disclosed what it characterized as "short-term negative transitional impacts especially including significant trade inventory build in the first quarter of fiscal 2017 in parts of the P&G business," indicating that the P&G Specialty Beauty Business may have been overvalued. At the same time, Defendant Pane assured the market that "[o]n the P&G Beauty Business merger, we are reiterating our previously communicated $750 million synergy target by fiscal 2020. The integration is progressing as expected, with no major issues to date."[2] On this news, Coty's stock price dropped $1.76 per share, or nearly 9%, from a close of $20.04 per share on February 8, 2017 to close at $18.28 per share on February 10, 2017 after two days of trading on heavy volume.

---

[1] https://investors.coty.com/news-events-and-presentations/news/news-details/2016/Coty-Completes-Merger-with-PG-Specialty-Beauty-Business/default.aspx

[2] https://investors.coty.com/news-events-and-presentations/news/news-details/2017/Coty-Inc-Reports-Second-Quarter-Fiscal-2017-Results-the-First-Quarter-After-Successful-Completion-of-the-Merger-with-PG-Beauty-Business/default.aspx

5.     Less than a year later however, Coty surprised investors with disappointing financial results for the fourth quarter and fiscal year ended June 30, 2017 before the market opened on August 22, 2017, including a 10% organic revenue decline in Consumer Beauty – which historically accounted for nearly half of Coty's revenue – signaling that the integration of P&G's over 40 beauty brands was still not a reality. That same day, Defendant and Chief Executive Officer ("CEO") Pane assured investors that "[w]e completed the incredibly complex acquisition of the P&G Beauty Business, fully reorganized into a product and customer focused organizational structure, successfully reached significant milestones in our integration efforts, and boosted our brand portfolio…" and that "[r]egarding the P&G Beauty Business, our integration efforts are proceeding well and we remain on track with the synergy delivery."[3] On this news, Coty's stock price dropped $3.31 per share, or nearly 17%, from a close of $19.55 per share on August 21, 2017 to close at $16.24 per share on August 24, 2017 after three days of trading on heavy volume.

6.     Then, before the market opened on November 7, 2018, Coty surprised the market again, announcing a bigger than expected decline in first quarter fiscal year 2019 sales due to "several temporary supply-chain related headwinds" which included "[w]arehouse and planning center consolidated disruptions in Europe and the U.S." While conceding "the increased scope of the disruptions resulted in much weaker results than previously expected," which reflected the internal challenges in integrating P&G's beauty brands into Coty's structure, Defendant Pane indicated that the challenges would be short-lived: "With the P&G Beauty integration near completion, and after we have overcome the internal challenges, we will be better equipped to

---

[3] https://investors.coty.com/news-events-and-presentations/news/news-details/2017/Coty-Inc-Reports-Fiscal-2017-Fourth-Quarter-and-Full-Year-Results/default.aspx

focus more externally."[4] On this news, Coty's stock price dropped $2.88 per share, or nearly 26%, from a close of $11.18 per share on November 6, 2018 to a close of $8.30 per share on November 8, 2018 after two days of trading on heavy volume.

7.      But on July 1, 2019, Coty announced the write down of about $3 billion in value of brands acquired from P&G as part of a four-year restructuring plan, confirming that the P&G Specialty Beauty Business had been overvalued. During the business update call, Defendant Laubies admitted that "it is clear that the difficulty of th[e P&G] merger lies at the heart of many of the issues that Coty has faced since then" because the "integration took longer and was more complex than originally envisioned," "many parts of the acquired business had weak performance since the merger," and "the sustained commitment to meeting the financial targets set at the start of the deal limited the organization's ability to address some of the underlying trends."[5] At the same time, Laubies assured investors that "we have now identified what we need to change in our company to be lasting and sustainable performance with the focus initially building a better business before we build a significantly bigger one." On this news, Coty's stock price dropped $1.94, or over 14%, from an opening price of $13.53 per share on July 1, 2019 to a closing price of $11.59 per share that day on heavy volume.

8.      Just over four months later, on November 18, 2019, Coty announced another beauty brand acquisition – a 51% majority stake in Kylie Cosmetics for $600 million in order to "build and further develop Kylie's existing beauty business," which "realized an estimated $177M net

---

[4] https://investors.coty.com/news-events-and-presentations/news/news-details/2018/Coty-Inc-Reports-First-Quarter-Fiscal-2019-Results/default.aspx

[5] https://s23.q4cdn.com/980953510/files/doc_events/20190701_COTY_MA_Call_DN000000002663079007.pdf

revenues for the trailing twelve months (TTM)." Kylie Jenner was described "as the youngest-ever self-made billionaire on the cover of Forbes Self-Made Billionaire issue in August 2018."[6]

9.      But then, on May 29, 2020, Forbes reported that Kylie Jenner "has been inflating the size and success of her business. For years." – revealing that Defendants had overvalued yet another acquisition.[7] On this news, Coty fell $0.56, or over 13%, from a close of $4.19 on May 28, 2020 to a close of $3.63 per share on May 29, 2020 on heavy volume.

10.      Throughout the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose material adverse facts about Coty's business, operations, and prospects. Specifically, Defendants misrepresented and/or failed to disclose: (1) that despite being no stranger to beauty brand acquisitions, Coty did not have adequate processes and procedures in place to assess and properly value the P&G Specialty Beauty Business and Kylie Cosmetics acquisitions; (2) that as a result, Coty had overpaid for the P&G Specialty Beauty Business and Kylie Cosmetics; (3) that Coty did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain; (4) that, as a result of its inadequate infrastructure, Coty was not successfully integrating the beauty brands it acquired from P&G and not delivering synergies from the acquisition; (5) and that, as a result of the foregoing, Coty's financial statements and Defendants' statements about Coty's business, operations, and prospects, were materially false and/or misleading at all relevant times.

---

[6] https://investors.coty.com/news-events-and-presentations/news/news-details/2019/Coty-and-Kylie-Jenner-Announce-Strategic-Partnership-to-Expand-Beauty-Brands-Globally/default.aspx
[7] https://www.forbes.com/sites/chasewithorn/2020/05/29/inside-kylie-jennerss-web-of-lies-and-why-shes-no-longer-a-billionaire/#635aade725f7

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, Plaintiff and other Class members have suffered significant losses and damages.

## II.     JURISDICTION AND VENUE

12.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, Coty maintains offices in this Judicial District.

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.     PARTIES

16.     Plaintiff Crystal Garrett-Evans, as set forth in the accompanying certification, incorporated by reference herein, purchased Coty common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and material omissions alleged herein.

17.     Defendant Coty is incorporated in Maryland and headquartered in Amsterdam, Netherlands. Coty's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "COTY."

18.     Defendant Becht served as the Chairman of Coty's Board from October 2011 to November 2018 and continued as a member of the Board until January 2019. From September 2014 to September 2016, he also served as Interim CEO overseeing Coty's operations and mergers and acquisitions agenda, including the acquisition of the P&G Specialty Beauty Business. Mr. Becht holds a Bachelor of Arts degree in economics from the University of Groningen and an MBA from the University of Chicago, Booth School of Business.

19.     Defendant Pane served as Coty's CEO and a member of its Board from September 2016 to November 2018. He had joined Coty's Executive Committee in July 2015 as the Executive Vice President, Category Development. Prior to joining Coty, he spent nearly 20 years at Reckitt Benckiser in various roles, including Senior Vice President, Global Category Officer Consumer Health. Mr. Pane holds a degree in business administration from Bocconi University.

20.     Defendant Laubies served as Coty's CEO, a member of the Board, and a member of the Executive Committee from November of 2018 to May 2020. In January 2019, he also assumed the leadership for formulating and implementing the strategic vision for Consumer Beauty as its President. Prior to joining Coty, he served as the CEO of Jacobs Douwe Egberts BV from September 2013 to March 2018. Mr. Laubies holds a Master's degree in Economics from Sciences Politiques de Paris, Université Sorbonne and a Law degree from the Université Paris 2 Pantheon-Assas.

21.     Defendant Talhouët served as the Chief Financial Officer ("CFO") of Coty from December 2013 to September 2018, joining the Executive Committee in January 2014. Prior to

joining Coty, he was the Corporate Finance Officer Americas and a member of the finance executive committee for Mars Unisabi. Mr. Talhouët holds a bachelor's degree from the Paris Nanterre University and a master's degree from the National Conservatory of Arts & Crafts.

22.     Defendant Terisse has served as the CFO of Coty and a member of the Executive Committee since February 2019 and as its Chief Operating Officer ("COO") since February 2020. Prior to joining Coty, he spent the majority of his career at Danone, notably as Group CFO from 2008 to 2015 and Executive Vice President ("EVP") for Danone Africa Division from 2015 to 2017. Terisse holds a Bachelor's degree in Business and Management from IAE Lyon III and a Master's degree in Finance from EM Lyon Business School, France.

23.     Defendants Becht, Pane, Laubies, Talhouët, and Terisse are collectively referred to hereinafter as the "Individual Defendants."

24.     Because of the Individual Defendants' executive positions, they each had access to the undisclosed adverse information about Coty's business, operations, operational trends, controls, markets, and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, including the Executive Committee.

25.     It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications, as alleged herein, are the collective actions of the narrowly defined group of Defendants identified above. Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, controls, growth, products and present and future business prospects as alleged herein.

In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and/or misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements in violation of the federal securities laws.

26.     As officers and controlling persons of a publicly-held company whose shares are registered with the SEC pursuant to the Exchange Act and trade on the NYSE which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, products, markets, management, and present and future business prospects. In addition, the Individual Defendants each had a duty to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded shares would be based upon truthful and accurate information. Defendants' false and/or misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

27.     The Individual Defendants, because of their positions of control and authority as Officers and Directors of the Company, were able to, and did, control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance or had the ability or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

28.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Coty shares by disseminating materially false and/or misleading statements and/or concealing material adverse facts.

## IV.     DEFENDANTS' FALSE AND MISLEADING STATEMENTS

29.     Throughout the Class Period, Defendants were aware or severely reckless in not knowing that Coty did not have adequate processes and procedures in place to assess and properly value acquisitions, and that as a result, Coty had overpaid for the beauty brands acquired from P&G as well as Kylie Cosmetics. Further, Defendants were aware or severely reckless in not knowing that Coty did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

### A.     Defendants' Valuation & Integration of the P&G Specialty Beauty Business

30.     On the first day of the Class Period, October 3, 2016, Coty issued a press release announcing the completion of its blockbuster acquisition of the P&G Specialty Beauty Business for $12.5 billion to scale up its beauty business. In the press release, Defendant Becht, Chairman of Coty's Board of Directors, confirmed that "…*we now have a much improved team, structure and culture to make the vision of this merger a reality*."[8]

31.     The following month, on November 9, 2016, Coty reported first quarter fiscal 2017 results for the stand-alone Coty business prior to the completion of the merger with P&G Specialty Beauty Business. In the Company's press release, Defendant Bart declared that for the combines company, "[w]e *continue to target the total four-year synergies* and working capital benefits of

---

[8] https://investors.coty.com/news-events-and-presentations/news/news-details/2016/Coty-Completes-Merger-with-PG-Specialty-Beauty-Business/default.aspx

$750 million and $500 million, respectively, **with no change to the operating costs to realize both**," assuring investors that "while **there may be challenges as we integrate and rebuild the businesses**, we are firmly committed to realizing the ambitions we have and delivering value for all our shareholders."

32.    The statements in ¶¶30-31 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

33.    On February 9, 2017, Coty reported its second quarter fiscal 2017 financial results, the first quarter after its completion of the merger with the P&G Specialty Beauty Business. While Coty disclosed "negative transitional impacts especially including significant trade inventory build in the first quarter of fiscal 2017 in parts of the P&G business" on the Combined Company's net revenues, it assured investors those impacts were "**short-term**." Defendant Pane similarly stated that "[t]he business was impacted by significantly higher-than-anticipated inventory levels in the market on the acquired P&G Beauty Business, competitive pressure in the Consumer Beauty division and the distraction associated with the merger integration efforts," but described the impacts as "**short term challenges like the ones we faced in the first semester**."  Pane added that "[o]n the P&G Beauty Business merger, we are reiterating our previously communicated $750 million synergy target by fiscal 2020. The **integration is progressing as expected**, with **no major issues to date**."[9]

---

[9] https://investors.coty.com/news-events-and-presentations/news/news-details/2017/Coty-Inc-Reports-Second-Quarter-Fiscal-2017-Results-the-First-Quarter-After-Successful-Completion-of-the-Merger-with-PG-Beauty-Business/default.aspx

34.     On May 10, 2017, Coty reported third quarter fiscal 2017 results and in its press release, Defendant Pane again stated that "*[o]n the integration of the P&G Beauty Business, we are making good progress*."

35.     The statements in ¶¶33-34 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty did not have adequate processes and procedures in place to assess and properly value acquisitions, and that as a result, Coty overpaid for the beauty brands acquired from P&G. Further, far from being "**short term**," Coty fundamentally did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

36.     On August 22, 2017, Coty reported financial results for the fourth quarter and fiscal year ended June 30, 2017, including a 10% organic revenue decline in Consumer Beauty – which historically accounted for nearly half of Coty's revenue. As Defendant Pane conceded, "our Consumer Beauty division remains under pressure and its recovery is a key priority for us." However, Pane continued to assure investors that "[w]e completed the incredibly complex acquisition of the P&G Beauty Business, fully reorganized into a product and customer focused organizational structure, **successfully reached significant milestones in our integration efforts**, and boosted our brand portfolio…" and that "[r]egarding the P&G Beauty Business, **our integration efforts are proceeding well and we remain on track with the synergy delivery**."[10]

---

[10] https://investors.coty.com/news-events-and-presentations/news/news-details/2017/Coty-Inc-Reports-Fiscal-2017-Fourth-Quarter-and-Full-Year-Results/default.aspx

37.     On November 9, 2017, Coty reported its first quarter fiscal 2018 financial results and in its press release, Defendant Pane declared that "*as of September 1, we* have exited our third and final TSA with P&G for the ALMEA region and *now have control of processes, systems and data across the new Coty*." [11]

38.     The statements in ¶¶36-37 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

39.     On February 8, 2018, Coty reported its second quarter fiscal 2018 financial results and in its press release, Defendant Pane stated with regard to margin that "we continue to aim for a healthy improvement in the second half of the year versus the prior year, with most of the impact coming in Q4, *as we continue to deliver on our merger synergies*."[12]

40.     On May 9, 2018, Coty reported its third quarter fiscal 2018 financial results and in its press release, Defendant Pane stated that "[t]he Consumer Beauty division continued its uneven performance, but with encouraging signs of stability" and that with regard to "adjusted operating margin, we continue to aim for a healthy improvement in the second half of the year versus the prior year, with most of the impact coming in Q4, *as we continue to deliver on our merger synergies*." In addition, during the earnings call, Defendant Talhouët stated that "[t]he overall *integration is progressing in line with our timetable.*" As we advance towards the end of the

---

[11] https://investors.coty.com/news-events-and-presentations/news/news-details/2017/Coty-Inc-Reports-First-Quarter-Fiscal-2018-Results/default.aspx
[12] https://investors.coty.com/news-events-and-presentations/news/news-details/2018/Coty-Inc-Reports-Second-Quarter-Fiscal-2018-Results/default.aspx

integration, we have fine-tuned our original estimate made 2 years ago and have broadened the scope, including further go-to-market changes, systems enhancements and more complete one order, **one shipment**, one invoice."

41.     The statements in ¶¶39-40 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

42.     On August 21, 2018, Coty reported its fiscal year 2018 fourth quarter and full year financial results and in its press release, disclosed "**short term** supply chain disruptions resulting from the consolidation of warehouses and planning centers in North America and Europe, as the ex P&G business is integrated into Coty."[13] At the same time, Defendant Pane assured the market that "[t]he peak of the impact of the supply chain disruptions due to our logistics and manufacturing consolidation will come in 1Q19, with a smaller tail end in 2Q19. . . . we do expect that **these business integration related impacts will be largely over by the end of first half 2019** and our FY19 targets take these disruptions into consideration." Pane also touted that "[t]he **first half of our synergies commitment has been delivered as planned by FY18.**"

43.     On November 7, 2018, Coty announced a bigger than expected decline in first quarter fiscal year 2019 sales due to "several **temporary** supply-chain related headwinds" which included "[w]arehouse and planning center consolidated disruptions in Europe and the U.S." In the Company's press release, Defendant Pane also conceded "the increased scope of the

---

[13] https://investors.coty.com/news-events-and-presentations/news/news-details/2018/Coty-Inc-Reports-Fiscal-2018-Fourth-Quarter-and-Full-Year-Results/default.aspx

disruptions [in the first quarter from warehousing and planning consolidation] resulted in much weaker results than previously expected," reflecting the internal challenges in integrating P&G's beauty brands into Coty's structure. However, Defendant Pane again indicated that the challenges would be short-lived and the integration was going as expected: "As a result of these disruptions, we have decided to modify our distribution center consolidation plan for the remainder of the year to minimize business impact. ***With a healthy synergy delivery already in 1Q19, these modifications should have no impact to our commitment of $225 million of synergies in FY19 and $750 million total by the end of FY20***. . . . With ***the P&G Beauty integration near completion***, and after we have overcome the internal challenges, we will be better equipped to focus more externally."[14]

44.     The statements in ¶¶42-43 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because rather than "***short term***" or "***temporary***," Coty fundamentally did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

45.     On February 8, 2019, Coty reported its second quarter fiscal 2019 financial results and noted in its press release that there was "some moderation in the supply chain-related headwinds discussed in 1Q19." Defendant Pane also touted that "***the management team we have put into place is the right one*** to develop this plan, and that together with the broader Coty organization, we will be able to meet the objectives of driving gross margin improvement," which

---

[14] https://investors.coty.com/news-events-and-presentations/news/news-details/2018/Coty-Inc-Reports-First-Quarter-Fiscal-2019-Results/default.aspx

"means managing revenue and costs, improving product mix and range, simplifying our portfolio and formulations, and systemically deploying lean-inspired methodologies in our manufacturing and logistics operations."[15]

46.     On May 8, 2019, Coty reported its third quarter fiscal 2019 financial results and its press release noted that "we ***largely resolved the supply constraints across all divisions***, resulting in a significant reduction in supply chain-related headwinds in 3Q19 and a minimal expected impact in 4Q19." Defendant Pane also stated that "[t]hird quarter results clearly indicate that ***supply issues are largely resolved*** and we expect very limited impact from supply chain disruption on the business in the remainder of fiscal 2019."[16]

47.     The statements in ¶¶45-46 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty fundamentally did not have adequate infrastructure to smoothly integrate and support the beauty brands that it acquired from P&G, including an adequate supply chain, and that as a result, Coty was failing to successfully integrate and deliver synergies from the acquisition of those beauty brands.

48.     On July 1, 2019, Coty announced the write down of about $3 billion in value of brands acquired from P&G as part of a four-year restructuring "Turnaround Plan," confirming that the P&G Specialty Beauty Business had been overvalued.[17] During the business update call, Defendant Laubies admitted that "it is clear that the difficulty of th[e P&G] merger lies at the heart

---

[15] https://investors.coty.com/news-events-and-presentations/news/news-details/2019/Coty-Inc-Reports-Second-Quarter-Fiscal-2019-Results/default.aspx

[16] https://investors.coty.com/news-events-and-presentations/news/news-details/2019/Coty-Inc-Reports-Fiscal-Third-Quarter-2019-Results/default.aspx

[17] https://investors.coty.com/news-events-and-presentations/news/news-details/2019/Coty-Announces-Turnaround-Plan-to-Better-Leverage-Its-Platform-and-Step-up-Performance/default.aspx

of many of the issues that Coty has faced since then" because the "integration took longer and was more complex than originally envisioned," "many parts of the acquired business had weak performance since the merger," and "the sustained commitment to meeting the financial targets set at the start of the deal limited the organization's ability to address some of the underlying trends."[18] At the same time, Laubies assured investors that "*we have now identified what we need to change in our company* to be lasting and sustainable performance with the focus initially building a better business before we build a significantly bigger one."

49.     On August 28, 2019, Coty reported its fourth quarter fiscal 2019 and full year results which were in-line with guidance and in its press release, Defendant Terisse declared that "[w]e now have *a clear business and financial framework* for the next four years."[19]

50.     The statements in ¶¶48-49 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty still did not have adequate processes and procedures in place to assess and properly value acquisitions.

**B.     Defendants' Valuation & Integration of Kylie Cosmetics**

51.     On November 18, 2019, Coty announced another beauty brand acquisition – a 51% majority stake in Kylie Cosmetics for $600 million in order to "build and further develop Kylie's existing beauty business," which "realized an estimated $177M net revenues for the trailing twelve

---

[18]https://s23.q4cdn.com/980953510/files/doc_events/20190701_COTY_MA_Call_DN00000000 2663079007.pdf

[19] https://investors.coty.com/news-events-and-presentations/news/news-details/2019/Coty-Inc-Reports-Fiscal-2019-Fourth-Quarter-and-Full-Year-Results-In-line-with-Guidance/default.aspx

months (TTM)." Kylie Jenner was described "as the youngest-ever self-made billionaire on the cover of Forbes Self-Made Billionaire issue in August 2018."[20]

52.     On February 5, 2020, Coty reported its second quarter fiscal year 2020 financial results and in its press release, defendant Terisse stated  that "we have now commenced a ***strategic partnership with Kylie Jenner***, and we look forward to building a high growth, digitally native beauty brand."[21]

53.     The statements in ¶¶51-52 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because Coty did not have adequate processes and procedures in place to assess and properly value acquisitions, and that as a result, Coty overpaid for Kylie Cosmetics.

## V.     The Truth Emerges

54.     Before the market opened on February 9, 2017, the truth began leaking out when Coty reported its second quarter fiscal 2017 results, which was the first quarter after its completion of the merger with the P&G Specialty Beauty Business. Coty disclosed what it characterized as "short-term negative transitional impacts especially including significant trade inventory build in the first quarter of fiscal 2017 in parts of the P&G business," indicating that the P&G Specialty Beauty Business may have been overvalued. At the same time, Defendant Pane assured the market that "[o]n the P&G Beauty Business merger, we are reiterating our previously communicated $750 million synergy target by fiscal 2020. The integration is progressing as expected, with no major issues to date."

---

[20] https://investors.coty.com/news-events-and-presentations/news/news-details/2019/Coty-and-Kylie-Jenner-Announce-Strategic-Partnership-to-Expand-Beauty-Brands-Globally/default.aspx

[21] https://investors.coty.com/news-events-and-presentations/news/news-details/2020/Coty-Inc-Reports-Fiscal-Second-Quarter-2020-Results/default.aspx

55.     On this news, Coty's stock price dropped $1.76 per share, or nearly 9%, from a close of $20.04 per share on February 8, 2017 to close at $18.28 per share on February 10, 2017 after two days of trading on heavy volume.

56.     Less than a year later however, Coty surprised investors with disappointing financial results for the fourth quarter and fiscal year ended June 30, 2017 before the market opened on August 22, 2017, including a 10% organic revenue decline in Consumer Beauty – which historically accounted for nearly half of Coty's revenue – signaling that the integration of P&G's over 40 beauty brands was still not a reality. That same day, Defendant and Chief Executive Officer ("CEO") Pane assured investors that "[w]e completed the incredibly complex acquisition of the P&G Beauty Business, fully reorganized into a product and customer focused organizational structure, successfully reached significant milestones in our integration efforts, and boosted our brand portfolio…" and that "[r]egarding the P&G Beauty Business, our integration efforts are proceeding well and we remain on track with the synergy delivery."

57.     On this news, Coty's stock price dropped $3.31 per share, or nearly 17%, from a close of $19.55 per share on August 21, 2017 to close at $16.24 per share on August 24, 2017 after three days of trading on heavy volume.

58.     Then, before the market opened on November 7, 2018, Coty surprised the market again, announcing a bigger than expected decline in first quarter sales due to "several temporary supply-chain related headwinds" which included "[w]arehouse and planning center consolidated disruptions in Europe and the U.S." While conceding that the internal challenges in integrating P&G's beauty brands into Coty's structure, Defendant Pane indicated that the challenges would be short-lived: "With the P&G Beauty integration near completion, and after we have overcome the internal challenges, we will be better equipped to focus more externally."

59.     On this news, Coty's stock price dropped $2.88 per share, or nearly 26%, from a close of $11.18 per share on November 6, 2018 to a close of $8.30 per share on November 8, 2018 after two days of trading on heavy volume.

60.     But on July 1, 2019, Coty announced the write down of about $3 billion in value of brands acquired from P&G as part of a four-year restructuring plan, confirming that the P&G Specialty Beauty Business had been overvalued. During the business update call, Defendant Laubies admitted that "it is clear that the difficulty of th[e P&G] merger lies at the heart of many of the issues that Coty has faced since then" because the "integration took longer and was more complex than originally envisioned," "many parts of the acquired business had weak performance since the merger," and "the sustained commitment to meeting the financial targets set at the start of the deal limited the organization's ability to address some of the underlying trends." At the same time, Laubies assured investors that "we have now identified what we need to change in our company to be lasting and sustainable performance with the focus initially building a better business before we build a significantly bigger one."

61.     On this news, Coty's stock price dropped $1.94, or over 14%, from an opening price of $13.53 to a closing price of $11.59 per share on July 1, 2019 on heavy volume.

62.     Just over four months later, on November 18, 2019, Coty announced another beauty brand acquisition – a 51% majority stake in Kylie Cosmetics for $600 million in order to "build and further develop Kylie's existing beauty business," which "realized an estimated $177M net revenues for the trailing twelve months (TTM)." Kylie Jenner was described "as the youngest-ever self-made billionaire on the cover of Forbes Self-Made Billionaire issue in August 2018."

63.     But then, on May 29, 2020, Forbes reported that Kylie Jenner "has been inflating the size and success of her business. For years." – revealing that Defendants had overvalued yet another acquisition.

64.     On this news, Coty fell $0.56, or over 13%, from a close of $4.19 on May 28, 2020 to a close of $3.63 per share on May 29, 2020 on heavy volume.

## VI.     ADDITIONAL SCIENTER ALLEGATIONS

65.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Coty, their control over, and/or receipt and/or modification of Coty's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Coty, participated in the fraudulent scheme alleged herein.

## VII.    APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE

66.     The market for Coty's common stock was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Coty's securities traded at artificially inflated prices during the Class Period. On October 5, 2016, the Company's share price closed at a Class Period high of $25.10 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying

upon the integrity of the market price of Coty's securities and market information relating to Coty, and have been damaged thereby.

67.     During the Class Period, the artificial inflation of Coty's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Coty's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Coty and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

68.     At all relevant times, the market for Coty's common stock was an efficient market for the following reasons, among others:

            a.     Coty common stock met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

            b.     On average, more than 4% of Coty's stock outstanding were traded weekly during the Class Period;

            c.     As a regulated issuer, Coty filed periodic public reports with the SEC and/or the NYSE;

            d.     Coty regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

      e.    Coty was followed by numerous securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports were publicly available and entered the public marketplace.

      f.    Multiple market makers made a market in Coty's common stock during the Class Period; and

      g.    The price of Coty's common stock responded quickly to incorporate and reflect new public information concerning Coty during the Class Period.

69.    As a result of the foregoing, the market for Coty's securities promptly digested current information regarding Coty from all publicly available sources and reflected such information in Coty's share price. Under these circumstances, all purchasers of Coty's securities during the Class Period suffered similar injury through their purchase of Coty's securities at artificially inflated prices and a presumption of reliance applies.

70.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable

- 23 -

investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## VIII.   NO SAFE HARBOR

71.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Coty who knew that the statement was false when made.

## IX.    CAUSES OF ACTION

### COUNT I

**Violation of § 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

72.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Coty's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

74.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Coty's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Coty's financial well-being and prospects, as specified herein.

76.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Coty's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Coty and its business operations and future prospects in light of

the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

77. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

78. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Coty's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have

actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Coty's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Coty's securities during the Class Period at artificially high prices and were damaged thereby.

80.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Coty was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Coty securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**Violation of § 20(a) of The Exchange Act**
**(Against the Individual Defendants)**

83.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     Individual Defendants acted as controlling persons of Coty within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of Coty and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.     As set forth above, Coty and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as

controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)      Declaring this action to be a proper class action pursuant to Federal Rule of Civil Procedure ("Rule") 23, certifying Plaintiff as Class Representatives pursuant to Rule 23(c), and appointing Roche Cyrulnik Freedman LLP as Class Counsel pursuant to Rule 23(g);

b)      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c)      Awarding Plaintiff's reasonable costs and expenses, including attorneys' fees, expert fees, and its other costs and expenses; and

d)      Awarding such equitable, injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal rule of Civil Procedure 38(b), Plaintiff hereby respectfully demands a trial by jury for all claims.


Dated: September 4, 2020                    Respectfully submitted,

                                            **ROCHE CYRULNIK FREEDMAN LLP**
                                            */s/ Constantine Economides*
                                            Constantine Economides
                                            Velvel (Devin) Freedman (*pro hac* pending)
                                            Ivy T. Ngo (*pro hac* pending)
                                            200 South Biscayne Boulevard

Miami, Florida 33131
Telephone: (305) 971-5943
Facsimile: (646) 392-8842
Email: ceconomides@rcfllp.com
        vel@rcfllp.com
        ingo@rcfllp.com

Kyle Roche
Jason Cyrulnik
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: kyle@rcfllp.com
        jcyrulnik@rcfllp.com

*Counsel for Plaintiff Crystal Garrett-Evans and the Proposed Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac* pending)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Plaintiff Crystal Garrett-Evans*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.      I, Crystal Garrett-Evans, make this declaration pursuant to §27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or §21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Coty, Inc. ("Coty" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Coty securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Coty securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet (Schedule "A") lists all of my transactions in Coty securities during the Class Period, as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this day of

9/4/2020
_____.

DocuSigned by:

*Crystal Garrett-Evans*

DAB88E868BC0471...

Crystal Garrett-Evans

### SCHEDULE A

Crystal Garrett-Evans's Transactions in
Coty Inc. (COTY)

| Date | Transaction | Quantity | Price per Share |
|------|-------------|----------|-----------------|
| 1/11/2017 | PURCHASE | 2 | $ 23.0550 |
| 1/19/2017 | PURCHASE | 1 | $ 28.40 |
| 1/23/2017 | PURCHASE | 1 | $ 28.54 |